**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

UNITED STATES OF AMERICA                    CRIMINAL NO. 15-0155

VERSUS                                      JUDGE ELIZABETH E. FOOTE

GAMMION MCCLOUD

## MEMORANDUM RULING

Before the Court is a Motion to Waive or Modify Restitution filed by the Defendant, Gammion McCloud ("McCloud"). *See* Record Document 53. Therein, McCloud requests that the Court waive or substantially reduce the restitution obligation ordered in his case due to his financial inability to pay. *See id.* at 1. McCloud asserts that the restitution obligation is not feasible, creates undue hardship, and undermines the rehabilitative goals of sentencing. *See id.* at 2. Alternatively, McCloud requests that the Court modify his payment schedule. *See id.* at 2-3. For the following reasons, McCloud's motion [Record Document 53] is **DENIED**.

### Background

On July 15, 2015, a grand jury charged McCloud with Travel to Engage in Criminal Sexual Activity in violation of 18 U.S.C. § 2422(a) (Counts 1 and 3) and Interstate Domestic Violence in violation of 18 U.S.C. §§ 2261(a)(2) and (b)(2) (Counts 2, 4, and 5). *See* Record Document 1. On March 2, 2017, McCloud entered a stipulated guilty plea as to Counts 1 and 2. *See* Record Documents 37 & 38. [1]

---

[1] McCloud's guilty plea was entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), which allows the parties to agree to a specific sentence that binds the Court upon acceptance of the guilty plea.

The stipulated factual basis of the guilty plea provides that McCloud met his victim in Las Vegas, Nevada in 2005. *See* Record Document 38-3 at 1. The victim was working as a prostitute at that time, and McCloud began a relationship with her as her "boyfriend." *See id.* McCloud would have sex with the victim and bring her to meet with her "customers." *See id.* In 2008, McCloud and the victim traveled to Phoenix, Arizona, where the victim began working as a prostitute. *See id.* McCloud and the victim worked together as prostitute and pimp in Arizona and traveled from Arizona to Florida to spend time with McCloud's family. *See id.* They continued to have a boyfriend/girlfriend relationship from 2008 until 2014. *See id.* at 2. In 2011 or 2012, the victim gave birth to a daughter. *See id.* McCloud is the father of the child. *See id.*

By 2014, McCloud had become progressively more physically abusive to the victim while continuing to have a sexual relationship with her. *See id.* The physical abuse included, but was not limited to, McCloud punching the victim. *See id.* On or about March 5, 2014, McCloud brought the victim from Florida to Lake Charles, Louisiana so that she could engage in prostitution. *See id.* Upon arriving in Lake Charles, McCloud set the victim up in a Motel 6 and thereafter at the Knights Inn so that she could engage in prostitution. *See id.*

While in Lake Charles, McCloud continued to engage in violent behavior towards the victim. *See id.* He regularly beat the victim causing her extreme physical pain and on one occasion he sexually assaulted her, by causing her to engage in a sex act by force. *See id.* McCloud's actions caused serious bodily injury to the victim. *See id.* At the time McCloud engaged in the sexual assault he possessed and used a dangerous weapon. *See id.*

On August 3, 2017, the Court held a sentencing hearing. *See* Record Document 45. During the hearing the Government produced evidence to support its request for restitution on behalf of the victim, which included reports from the victim's psychologist, gynecologist, and plastic surgeon. *See* Record Document 47-1. The psychologist reported that the victim suffered from PTSD and general anxiety disorder due to repeated sexual assaults and psychological torture, which would require ongoing therapy for many years. *See id.* at 20-21. Additionally, the psychologist recommended counseling for the victim's daughter, who witnessed her mother's abuse. *See id.* The gynecologist reported that the victim presented with stress incontinence/cystocele and uterine prolapse likely caused by repeated trauma, and which would require surgery to repair. *See id.* at 2. The plastic surgeon recommended reconstructive surgery to repair the victim's nose, eyes, face, and vagina. *See id.* at 14-17.

At the conclusion of the sentencing hearing the Court imposed a sentence of 240 months as to Count 1 and 60 months as to Count 2, to run consecutively, for a total of 25 years. *See* Record Document 48 at 2.[2] The Court imposed five years of supervised release on each count, to run concurrently. *See id.* at 3. The Court also imposed $73,550 in restitution payable to the victim. *See id.* at 5. This amount was based on the following: $32,500 for the victim's counseling sessions for five years, $13,500 for surgery on the victim's eyes and nose, $10,300 for rhytidoplasty (facial surgery), $10,000 for vaginal surgery, and $750 for miscellaneous surgical expenses. The restitution order also includes $6500 for one year of counseling sessions for the victim's daughter, who was harmed as

---

[2] The sentence imposed is consistent with the terms of the stipulated plea agreement.

a result of the offense.[3]  McCloud did not appeal his conviction, sentence, or the amount of restitution ordered.

**Law and Analysis**

The restitution ordered by the Court in this matter was mandatory pursuant to the Mandatory Victims Restitution Act ("MVRA") based on McCloud's commission of a crime of violence, that is, interstate domestic violence in violation of 18 U.S.C. § 2261(a). *See* 18 U.S.C. § 3663A(c)(1)(A)(i). Restitution must be ordered without consideration of a defendant's economic circumstances. *See* 18 U.S.C. § 3664(f)(1)(A). However, if there is a "material change in the defendant's economic circumstances that might affect a defendant's ability to pay restitution" the court may "adjust the payment schedule, or require immediate payment in full, as the interests of justice require." 18 U.S.C. § 3664(k). A "material change is a bona fide change in the defendant's financial condition, either positive or negative." *United States v. Defiore*, No. 21-cr-0013, 2025 WL 1158911 at *2 (E.D. La. Apr. 21, 2025) (quoting *Cani v. United States*, 331 F.3d 1210, 1215 (11th Cir. 2003)).

Restitution in this matter was properly imposed by the Court under the MVRA based on the Government's presentation of evidence regarding the victim's considerable losses that were proximately caused by McCloud's offense of conviction. While McCloud has requested that the Court waive or reduce the restitution amount owed, he has presented no evidence that there has been a change in his financial condition. The Court notes that McCloud's presentence investigation report indicates he was indigent at the

---

[3] Restitution may be ordered for any person "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . ." 18 U.S.C. § 3663A(a)(2).

time restitution was imposed, and his motion states that he remains indigent while incarcerated. *See* Record Documents 50 at ¶ 129-130 & 53 at 1. Because restitution was properly ordered and there has been no material change in the Defendant's financial circumstances, the Court declines to waive or reduce the restitution amount ordered.

Alternatively, McCloud requests that the Court modify the payment schedule to a nominal amount of $25 per quarter because he is unable to earn income and only receives funds from outside deposits. *See* Record Document 53 at 1. The Inmate Financial Responsibility Program ("IFRP") is administered by the Bureau of Prisons ("BOP") to assist inmates in meeting their legitimate financial obligations, including restitution orders, by creating a financial plan. *See* 28 C.F.R. § 545.10. McCloud states that he currently makes payments of $50 per quarter under his plan. *See* Record Document 53 at 1. The victim is entitled to receive restitution payments from McCloud's income while incarcerated, even if the income is derived from outside deposits. *See* 28 C.F.R. § 545.11(b); *Thurston v. Chester*, 386 F. App'x 759, 762 (10th Cir. 2010). Moreover, this Court lacks jurisdiction to consider a challenge to the terms of the IFRP program, which is administered by the BOP. *See United States v. Diggs*, 578 F.3d 318, 319 (5th Cir. 2009). A challenge to the IFRP payment plan must be filed under 28 U.S.C. § 2241 in the district of incarceration. The BOP inmate locator shows that McCloud is currently incarcerated at Beaumont Medium FCI in Beaumont, Texas. Thus, any challenge to the administration of the IFRP program must be filed in the Eastern District of Texas.

Finally, the Court notes that once McCloud is released, the terms of his supervised release require him to pay 10% of his gross income towards his restitution obligation. *See* Record Document 48 at 4. This is a minimal amount considering the substantial harm

caused to the victim. The Court declines to modify the terms of supervised release imposed in its judgment to reduce the amount payable to the victim once McCloud begins supervision.

## Conclusion

For the reasons assigned herein, McCloud's motion to waive or modify restitution [Record Document 53] is **DENIED**.

**THUS DONE AND SIGNED** this ____ 29th day of April, 2026.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE